## Searight's Estate.  Searight's Appeal.

*Will—Distribution—Real estate—Income.*

A testator, having large assets and also large liabilities, directed as follows: " I hereby authorize and empower my executors hereinafter named to keep my estate intact and undistributed for a period of five years after my decease if they see fit so to do.  Within said period of five years I empower my said executors to sell and convey my real estate for the purpose of raising money and to mortgage or in any way encumber or pledge either my personal or real estate for the purpose of borrowing money if they see fit so to do.  I empower my executors at any time before final settlement of my estate to sell and convey any or all of my real estate, wheresoever situate, for the purpose of payment of my debts, if they see fit so to do."  Testator directed that at the end of the five years his estate should be divided among his widow and children in the proportions to which they would be entitled under the intestate laws.  *Held*, that the widow and children were not entitled to the income of the real estate during the five years. .

Argued April 27, 1894.    Appeal, No. 412, Jan. T., 1894, by Keziah Searight et al., widow and children of F. W. Searight, deceased, from decree of O. C. Cumberland Co., dismissing ex-

ceptions to auditor's report.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Adjudication of executor's account.

The auditor, Edw. B. Watts, Esq., reported the facts to be as follows :

"F. W. Searight died on the 8th day of August, 1888, leaving a will, which was duly proven after his death.   The will is as follows :

"'Item. I hereby authorize and empower my executors hereinafter named to keep my estate intact and undistributed for a period of five years after my decease if they see fit so to do.

"'Item. Within said period of five years I empower my said executors to sell and convey my real estate for the purpose of raising money, and to mortgage or in any way encumber or pledge either my personal or real estate for the purpose of borrowing money if they see fit so to do.

"'Item. I empower my executors at any time before final settlement of my estate to sell and convey any or all of my real estate wheresoever situate for the purpose of payment of my debts if they see fit so to do.

"'Item. At the end of said five years or before or after said period, upon settlement of my estate by my executors, I hereby direct that my wife and children shall take such portions of my estate as they would respectively be entitled to under the intestate laws of this commonwealth.

"'I hereby appoint my wife Keziah Searight, R. M. Searight and Joseph A. Stuart to be the executors of this my last will and testament.'

"Letters testamentary were duly granted to the executors named in the will.

"F. W. Searight died possessed of certain real estate (farms) and personal property, but he was heavily in debt.   His estate is not sufficient to pay the debts.

"The accountant, on Nov. 6, 1891, filed a first account, which was made up of personalty and the income of the real estate.   The balance in his hands as shown by that account was distributed as personalty to all the creditors of the estate, by an auditor appointed by the court, without objection on the part of anybody.   A dividend, however, of only .0472 per cen-

tum of the debts was thereby paid.   The account now before
the auditor is made up chiefly of income from the real estate
and the proceeds of the sales of the real estate.   The income
is from the proceeds of the crops of the years 1891 and 1892.
The sales of the real estate took place in the fall of 1892, and
were confirmed by the court on Dec. 16, 1892.

" The accountant in his capacity of executor collected the
income from the real estate with the exception of $962.23,
which was collected by his coexecutors.   The real estate did
not sell for enough to pay the judgments that were against it
at the time of F. W. Searight's death.   The debit side of the
account shows charges to the amount of $43,130, and the cred-
its claimed amount to $31,102.21.   Exceptions to the account
were filed by the coexecutors and by creditors.

" The widow and heirs of F. W. Searight claim the proceeds
of the sale of all the crops gathered from the real estate and
charged on the debit side of the account.   A suit has been
brought by them against Joseph A. Stuart to No. 600 May
Term, 1893, in the Court of Common Pleas of Cumberland
county, for the recovery of these crops.   It was agreed before
the auditor that he should pass upon this question and that
the said suit should be merged in his determination and be
ended thereby."

The auditor refused to allow the claim of the widow and
children to the income from the real estate.

Exceptions to the auditor's report were dismissed by the
court in an opinion by STEWART, P. J., specially presiding.

*Errors assigned* were dismissal of exceptions to above rul-
ings, quoting them.

*E. W. Biddle* and *M. C. Herman*, for appellants.—In the
absence of a testamentary provision which produces a different
result, the rents, issues and profits of a decedent's real estate
accruing after his death belong to his widow and heirs ; and
the personal representative is not authorized to receive them :
Adams v. Adams, 4 Watts, 160 ; Merkel's Est., 131 Pa. 584.

If the personal representative collects the income of the
lands, the widow and heirs may recover the same from him ;
their right to the income is as absolute as was the right of

their ancestor: McCoy v. Scott, 2 Rawle, 222 ; Bakes v. Reese, 150 Pa. 44.

And where lands are sold by order of court for payment of debts, the widow and heirs are entitled to the rents therefrom until payment of the purchase money and delivery of the deed: Kalbfus v. Rundell, 134 Pa. 102.

To work ·a· conversion at testator's death, the ·direction to sell must be positive, irrespective of contingencies and independent of discretion: Peterson's Ap., 88 Pa. 397 ; Anewalt's Ap., 42 Pa. 414 ; Chew v. Nicklin, 45 Pa. 84 ; Hunt's & Lehman's Ap., 105 Pa. 128.

The lands of testator passed to his children by descent, subject to the widow's statutory dower, under the rule of the common law laid down in 2 Bl. Com. 241: Selfridge's Ap., 9 W. & S. 55 ; Vowinckel v. Patterson, 14 Pa. 28 ; Jones v. Caldwell, 97 Pa. 42.

*H. S. Stuart* and *John Hays, J. T. Stuart* with them, for appellee.—If the widow and children were entitled to the proceeds of the land it would have been on the theory that they were the owners of it, and if so they could have brought ejectment and ousted the executors from its control, but no one can conclude from any reading of the testator's will that such was his intention : Dundas's Ap., 64 Pa. 325 ; Miller v. Meetch, 8 Pa. 425 ; Burr v. Sim, 1 Whart. 265 ; Osgood v. Franklin, 2 Johns. Ch. 1 ; Smith's Est., 4 Phila. 181.

The intention of testator was to keep his estate intact and undisturbed for the period of five years. Until the end of that time the widow and children clearly take nothing. His scheme evidently was the use of the income during said period, to preserve the balance of all of his realty, if possible, for his family.

OPINION BY MR. JUSTICE MITCHELL, July 12, 1894 :

The widow and heirs are entitled to the income of the real estate between the death of testator and the sale, unless the will has taken it out of the usual course of devolution and put it in the hands of the executors for the payment of debts. It is not a question of conversion, as the learned judge below rightly held, but of intent.

The testator had large assets, but also large liabilities, and

the will indicates that he knew that a settlement of his estate in the usual course of law would leave little or nothing to his family. He had therefore the choice of letting the family get along for a few years without income, in order that they might then have something saved, or of letting them take the chances of the income from the farms for a few months and then have nothing. He plainly chose the first alternative. His will empowers his executors, of whom the widow was one, to keep his estate intact and undistributed for a period of five years, and during that period, at their discretion to sell and convey, or to mortgage or pledge any of his real or personal estate for the purpose of raising money for the payment of debts. At the end of the five years, or upon the settlement of the estate by the executors, distribution was to be made. Nothing could be plainer than the general intent and guiding purpose of the testator to take his estate out of the ordinary legal devolution, and to prevent a present distribution of any of it to the heirs, in the hope of ultimate advantage. The power expressly given over the whole estate, real and personal, to sell, mortgage or pledge for payment of debts, necessarily includes the power to manage, to collect and apply the income of the whole for the desired purpose. This the executors have done.

Decree affirmed.